**Malcolm H. DUBIN, trustee for the Malcolm H. Dubin Trust, U/A, 7/5/74, suing on his own behalf and on behalf of all other shareholders of Denelcor, Inc. similarly situated, Plaintiff,**

v.

**David R. MILLER; Daniel Fisher; Kenneth D. Leiman; Steven J. Rose; Robert T. Person; King D. Shwayder; James A. Hill; and David Lloyd–Price, Defendants.**

Civ. A. No. 85–N–2184.

United States District Court,
D. Colorado.

July 16, 1990.

Gene Mesh, Stephen M. Meiser, Gene Mesh & Associates, Cincinnati, Ohio, and Robert L. Malman, Denver, Colo., for plaintiff.

David W. Kerber, John S. Lutz, Anne T. Zubrinic, Kelly, Stansfield & O'Donnell, Denver, Colo., for defendants Miller, Leiman, Rose, Person, Shwayder & Lloyd-Price.

Donald M. Burkhardt, Grant, McHendrie, Haines & Crouse, Denver, Colo., for defendant Hill.

Jeffrey C. Pond, Marisa L. Williams, Cohen Brame & Smith, Denver, Colo., for defendant Daniel Fisher.

### MEMORANDUM OPINION AND ORDER

NOTTINGHAM, District Judge.

Plaintiff, as trustee of a trust, filed this action on October 1, 1985. Various pendent claims arising under state law have been eliminated, and the case now involves only a single claim for relief under section 10(b) of the Securities and Exchange Act of 1934, 15 U.S.C.A. § 78j(b) (West 1981), and rule 10b-5 promulgated thereunder. Plaintiff contends that defendants, as officers and/or directors of Denelcor, Inc., a now-bankrupt Colorado corporation, engaged in a scheme to artificially inflate the market price of Denelcor's common stock by disseminating false and misleading information concerning, among other things, (1) the development and marketing of certain large, high-performance computer systems manufactured by Denelcor and (2) the availability of the software necessary to run them. The misrepresentations of which plaintiff complains were purportedly contained in Denelcor's press releases, annual reports, and other publicly-distributed materials.

Four motions are before me for a ruling, but only two of them command detailed attention. First, defendants have moved to decertify the class which was "conditionally certified" on January 29, 1988. Second, they have moved for partial summary judgment based on their statute of limitations defense. A ruling on the motion to decertify the class requires a review of the litigation's procedural history.

### MOTION TO DECERTIFY CLASS

The case's initial year of life was consumed by procedural wrangling and rule 12 motions practice. During this period plaintiff filed one amended complaint, and defendants filed motions to dismiss, first, the original complaint and then the amended complaint. Plaintiff also filed a motion to certify the class described in the amended complaint. On June 23, 1986, Judge Carrigan dismissed all claims arising under state law, leaving only the claim for violation of rule 10b-5. On December 3, 1986, he denied the motion to certify the class on the ground that, premised as it was on an amended complaint which he had partially dismissed, the motion was moot. He also ordered plaintiff to file (1) a second amended complaint re-articulating the remaining claim under rule 10b-5 and (2) a motion for class certification, if plaintiff still wished to pursue a claim on behalf of a class.

It took plaintiff over three months to do *anything* in response to Judge Carrigan's order of December 3, 1986. On March 19, 1987, he filed his Second Amended Class

Action Complaint and Jury Demand—one day after Judge Carrigan had entered an order directing him to show cause why the case should not be dismissed for failure to prosecute it. Still, he did not file a motion seeking certification of the class for another few months—June 2, 1987. Because of requests for extension of time filed by both sides, the next six months were consumed in briefing the motion and setting (then re-setting) a hearing.

Judge Carrigan conditionally certified a Fed.R.Civ.P. 23(b)(3) class action on January 29, 1988. With limited exceptions, the conditional class included open-market purchasers of Denelcor stock from May 19, 1981, through July 27, 1985. Inexplicably, the deposition of the named plaintiff had not been taken by January 29, 1988, so Judge Carrigan was forced to decide the matter on conflicting arguments of counsel concerning (1) whether the named plaintiff's claims were typical of the class claims and (2) whether the named plaintiff could adequately represent the class. Indicating that he was "troubled somewhat by the conflict of the arguments of counsel," *Transcript of Proceedings*, January 29, 1988 at 43, he stressed the conditional and tentative nature of his ruling in the following language:

> Therefore, I conditionally certify the class[,] ... but on the condition that this case be vigorously handled, henceforward; that it be moved as quickly as possible toward trial, and prepared for trial or settlement; and that there be no further delays.
>
> If it should appear, through discovery or otherwise, that typicality is not as represented, and the adequacy of representation is not as represented, and it does not meet the conditions I've laid down, I would expect that defendants would file a motion to decertify the class; and I will grant it if it's so demonstrated.

*Id.* at 45.

Despite Judge Carrigan's admonition, the case proceeded no more expeditiously after his ruling than it had before. The named plaintiff's deposition was not concluded until August of 1988. The case was set for a 15-day trial to a jury to commence on October 2, 1989. Seventeen days before trial (September 15, 1989), defendants moved to decertify the class. Five days before trial (September 27, 1989), plaintiff responded to the motion by filing his own motion to bifurcate the trial in order to have the liability issues tried separately from the defenses of the statute of limitations and reliance, which plaintiff conceded might be applicable to his claims. *He still had filed no motion to give any notice to the class.*

On September 27, 1989, because of a conflicting criminal trial, Judge Carrigan vacated the trial date. Not until October 20, 1989, *eighteen days after trial had originally been scheduled to commence,* did plaintiff file a motion seeking court approval of the notice he proposed to send to class members, alerting them to the pendency of a class action. On November 8, 1989, Judge Carrigan entered an order approving the proposed notice. Plaintiff then proceeded to give notice to the class members, despite the pendency of defendants' motion to decertify the class.

■ It is against this background that I must consider defendants' arguments (1) that plaintiff's claims are not typical of the class claims and (2) that plaintiff and his counsel cannot fairly and adequately represent the class. *See* Fed.R.Civ.P. 23(a)(3), 23(a)(4). Defendants question plaintiff's "adequacy" as a representative on two grounds. First, they assert that plaintiff himself is simply not credible, that his friendship with one of Denelcor's directors has improperly limited the cast of defendants from whom the class is seeking recovery, and that he is motivated primarily by spite or ill-will toward the defendants. Second, they argue that plaintiff's counsel is not adequately protecting the interests of the class. Both plaintiff and his counsel have fiduciary obligations to the class. *Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F.Supp. 643, 661 (N.D.Ill.1986). When it becomes apparent that either cannot continue to fulfill those obligations, continuation as a class is improper.

*Rule 23(a)(4): Adequacy of Representation*

■ A plaintiff's lack of credibility and the impurity of his motives can render him an "inadequate" class representative. *See, e.g., id.* (credibility); *Kline v. Wolf,* 88 F.R.D. 696, 699–700 (S.D.N.Y.1981), *aff'd in part, vacated and remanded in part,* 702 F.2d 400 (2d Cir.1983) (credibility); *Kamerman v. Ockap Corp.,* 112 F.R.D. 195, 197 (S.D.N.Y.) (long-standing antagonism towards defendants); *Norman v. Arcs Equities Corp.,* 72 F.R.D. 502, 506 (S.D.N.Y.1976) ("*animus*" towards defendants). Careful distinctions must be made, however, when defendants question a representative's adequacy on these sorts of grounds. Lawsuits are frequently motivated by causes other than the desire for pecuniary gain, and some of these causes— even personal *animus* towards the defendants—are consistent with a finding that plaintiff is an adequate representative. Moreover, few plaintiffs come to court with halos above their heads; fewer still escape with those halos untarnished. For an assault on the class representative's credibility to succeed, the party mounting the assault must demonstrate that there exists admissible evidence so severely undermining plaintiff's credibility that a fact finder might reasonably focus on plaintiff's credibility, to the detriment of the absent class members' claims. It is not necessary that I resolve issues of credibility against the class representative. Decertification is appropriate if unique and substantial issues of credibility cling to the class representative, thereby creating a potential adverse impact on the class. *See Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F.Supp. at 660–61. Similarly, an attack on the class representative's motives must show that those motives are so peculiar that they somehow impair the interest of the entire class.

Viewed in this light, some of defendants' arguments are insignificant. Defendants point to the fact that Dale Tower, a personal friend of plaintiff, was not re-elected to Denelcor's board of directors. A second friend, Marjorie Katz, was fired by Denelcor in 1984. Even if these facts prove that plaintiff is motivated by *animus* toward the company, defendants have not shown how they impair the interests of the class. True, such *animus* may affect settlement negotiations, but that problem could be addressed by adequate class counsel and/or by the United States Magistrates, to whom I regularly refer cases for the purpose of facilitating settlement negotiations.

■ There are, however, other problems which are so serious as to preclude a finding that plaintiff is an adequate representative. Some relate to plaintiff's credibility. It is undisputed that on three separate occasions plaintiff requested employment with Denelcor and was refused. Also, according to documentation before me, plaintiff believed that Denelcor officials had threatened his life and suspected that Denelcor's financial problems may have been the result of a conspiracy headed by a competitor or a foreign power bent on stopping Denelcor's research on its high-performance computer systems. If these assertions had any basis in fact, one would expect plaintiff to tell me what it is; on the record before me, I can only conclude that the assertions are the product of a wild imagination. At the very least, it must be acknowledged that plaintiff's credibility is subject to extraordinary attack and that this problem may well divert the fact finders' attention from the merits and thus infect the claims of the class as a whole. Indeed, the potential attack on plaintiff's credibility creates another unique defense making plaintiff's claim atypical. *Kline v. Wolf,* 88 F.R.D. at 699. (Typicality is discussed in more detail below at 274.)

Plaintiff's personal relationship with former director Dale Tower casts a further cloud upon plaintiff's suitability to fulfill his fiduciary role. Tower was a director for thirteen months during the class period, yet he has not been named as a defendant. Defendants have argued—and will surely continue to do so at trial—that plaintiff has played favorites by suing only the directors he does not like. The omission to sue a potential defendant cannot but prejudice the class. Plaintiff's explanation for the omission—that Tower was a director "for a

relatively short period of time during the beginning of the class period" (13 months of a 50–month class period)—has a hollow ring. If the length of his tenure as a director is supposed to be the critical distinction between him and the named defendants, a reasonably prudent plaintiff and his counsel would have joined Tower and permitted the fact-finders to consider and sort out his liability. While the authorities cited by plaintiff do stand for the proposition that a class plaintiff need not join *every* possible defendant, plaintiff is obligated to supply a persuasive reason for the non-joinder. This he has failed to do.

■ Adequacy of representation also requires that counsel for the class fulfill a fiduciary obligation to the class, and this notion forms the second aspect of defendants' argument that plaintiff is not an adequate representative. Counsel for plaintiff allude to "extensive and successful participation in securities fraud class actions" and list all such actions in which counsel has been involved. This experience is undoubtedly important, but the court is surely entitled to consider what has been done in the case before it in order to evaluate whether counsel has adequately represented the class. This case's unusual procedural history affords a full opportunity to do so.

I am not satisfied that counsel for plaintiff have fulfilled their responsibilities. For example, in addition to the insufficiently-explained absence of Tower, plaintiff has failed to name two other Denelcor directors as defendants, one of whom, R.C. Mecure, was a director during 45 months of the 50–month class period. This raises serious questions concerning the conduct of the litigation. *See Biben v. Card,* [1985–1986 Transfer Binder] Fed.Sec.L.Rep. (CCH) ¶ 92,462, at 92,829, 1986 WL 1199 (W.D.Mo. 1986) (serious questions raised by class representative's decision to dismiss defendant broker in securities class action). The failure to join all responsible parties as defendants further supports the finding that plaintiff and counsel do not adequately represent the class.

More serious is plaintiff's delay in providing notice to the class members and in pursuing the class issues throughout the litigation. Rule 23(c)(2) requires that the best notice practicable be given to class members. Class members need to be alerted to their rights to opt out, to intervene and meaningfully participate in the pending class action, or to object to the adequacy of representation. Fed.R.Civ.P. 23(d)(2) advisory committee's note. This notice should go out as promptly as circumstances permit. 2 H. Newberg, *Newberg on Class Actions* § 8.09, at 112 (2d ed. 1985) (quoting Frankel, *Some Preliminary Observations Concerning Civil Rule 23,* 43 F.R.D. 39, 40–1 [1967]). *Cf. Barrett v. Thorofare Markets, Inc.,* 452 F.Supp. 880, 885 (W.D. Pa.1978). *See generally Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 94 S.Ct. 2140, 40 L.Ed.2d 732 (1974).

Plaintiff and counsel have not complied with the requirement to pursue their action with dispatch and to request notice to the class as promptly as circumstances permitted. Although plaintiff initially proceeded properly (by requesting class certification on February 6, 1986, the complaint having been filed October 1, 1985), interest seems to have waned after Judge Carrigan, having dismissed large parts of the amended complaint, ordered plaintiff to file a new complaint and motion to certify the class, if a class action was still desired. It took six months, and an intervening order threatening dismissal for failure to prosecute, for plaintiff to file the new complaint and motion. More critically, the court conditionally certified the class on January 29, 1988. It was not until October 20, 1989, 21 months after certification, 18 days after the original trial had been scheduled, and four years after the case had been filed, that plaintiff moved for court approval to send notice to the class.

Plaintiff seeks to explain the extraordinary delay in moving for notice to the class by portraying it as part of a considered, deliberate strategy to avoid needless expense in the circumstances presented here. The argument is that, since Judge Carrigan had only conditionally certified the class, it would have been imprudent of plaintiff to

move for notice until after final certification. Plaintiff also points to one case permitting notice after trial and entry of judgment, ignoring the suggestion in the case itself that such delayed notice is the rare exception. *See Postow v. OBA Fed. Sav. & Loan Ass'n,* 627 F.2d 1370, 1383 (D.C.Cir. 1980).

I am not persuaded by plaintiff's explanation, in light of the sequence of events here. Plaintiff could have moved for notice at any time, and, if he truly wished to avoid needless expense, he could have asked Judge Carrigan in this motion to review discovery and other events subsequent to the order of conditional certification and to confirm that the case could proceed as a class action. He did not do so. Instead, he waited until defendants had filed motions for decertification based partly on his failure to give notice. He responded in two ways. First, he moved to bifurcate the trial, so that it could proceed without notice to the class. Second, *while the motion to decertify was pending,* he not only moved for notice to the class, but also proceeded to assume the expense of giving notice, never once bringing to Judge Carrigan's attention his concern that he would incur needless expense if the court withdrew its conditional certification—a concern which should have been heightened by the filing of the motion for decertification. I therefore infer that plaintiff's delay in moving for notice to the class was hardly the result of a deliberate, sound strategy to avoid the potentially-needless expense of giving notice; the timing of the motion for notice can only be viewed as part of an ill-conceived, scrambling and belated attempt to blunt one of the better arguments made in the motions to decertify the class. It fully supports the finding that plaintiff and his counsel are not adequate class representatives.

*Rule 23(a)(3): Typicality*

■ Defendants argue that plaintiff's claims are not "typical" of the class claims because there are defenses to plaintiff's claim that may not be applicable to claims of the remainder of the class. The rationale behind the requirement that the class

representative's claims be typical of the class claims is recognition that a plaintiff with claims typical of the class will, in pursuing and defending his own self interest in the litigation, be concomitantly advancing or defending the interests of the class. 1 H. Newberg, *Newberg on Class Actions* § 3.22, at 199 (2d ed. 1985).

Plaintiff argues that his claims are typical of the class claims because he intends to rely solely on a fraud on the market theory in this case. This theory eliminates the need for an individual plaintiff to prove reliance. Underlying the theory is the presumption that a company's value will accurately be reflected in its open-market price. When fraud prevents accurate information from reaching the public, the price of stock on the open market may be distorted. If an investor can prove that the fraud was material, this theory creates a rebuttable presumption of reliance. *Basic Inc. v. Levinson,* 485 U.S. 224, 108 S.Ct. 978, 988–99, 99 L.Ed.2d 194 (1988).

Defendants intend to rebut this presumption with evidence that plaintiff traded not in reliance on market information, but on information obtained through his personal contacts with the company. Nonreliance on the integrity of the market is an affirmative defense to a fraud on the market theory. *Peil v. Speiser,* 806 F.2d 1154, 1161 (3d Cir.1986). Plaintiff's personal contacts with Denelcor's directors, officers, and employees are undisputed. During the class period, plaintiff contacted the company 210 times to obtain information about all aspects of its business. Plaintiff also called some directors, officers, and employees at home. He cultivated and maintained close friendships with at least two Denelcor employees.

Given the frequency with which plaintiff contacted Denelcor, as well as the proximity of those contacts to his stock transactions, a fact-finder could infer that he may have relied upon information obtained from those contacts as the basis for his investment decisions. Obviously, this undermines plaintiff's fraud on the market theory, *see Peil v. Speiser,* 806 F.2d at 1161, and makes his claims far different from

those of the class he purports to represent, which by definition consists of individuals who purchased solely on the basis of information disseminated to the public. *See Markewich v. Ersek,* 98 F.R.D. 9 (S.D.N.Y. 1982) (reliance on broker rather than market information makes claims atypical in a fraud on the market case).

"It is enough to deny class treatment when a defense peculiar to the class representative is even arguably present." *Wagner v. Lehman Bros. Kuhn Loeb Inc.,* 646 F.Supp. at 660. Here, it is obvious that plaintiff is subject to a unique defense. This case is closely analogous to *Markewich v. Ersek,* 98 F.R.D. at 9, where the court declined to certify a fraud on the market class action because it appeared that the named representatives may have relied upon information obtained from a broker rather than publicly available information. Plaintiff's contacts with Denelcor "insiders" make him uniquely subject to the claim that the allegedly misleading documents played an insignificant role in his investment decisions. Here, as in *Markewich,* the class members are entitled to a representative unencumbered by a unique defense, which has become the focus of this litigation. Because absent class members would not be subject to this defense, plaintiff's claim is not typical of the claims of the class and this requires decertification. *See id.; Masri v. Wakefield,* 106 F.R.D. 322, 325 (D.Colo.1984) (reliance on different types of legal theories under 10[b] claim creates atypical claims); *Kline v. Wolf,* 88 F.R.D. at 699–700 (typicality not met where class representative in fraud on the market case is subject to defense that he did not rely on allegedly misleading financial statement).

Plaintiff's most compelling argument against decertification is that it might be prejudicial to absent class members "at this late stage in the proceedings" because it might be difficult for other defrauded shareholders to institute new litigation on behalf of the class. I have considered the possibility of prejudice to the class in arriving at this decision. To some extent, the potential for this sort of prejudice is inherent in rule 23. Rule 23(c) expressly con-

templates the conditional certification that has occurred in this case. The rule also recognizes the possibility that an order certifying a class may be altered or amended before a decision on the merits. It is my duty under rule 23(c)(1) to ensure that, after conditional certification, the class representative continues to adequately represent the best interests of the class. *See, e.g., In re General Motors Corp. Engine Interchange Litigation,* 594 F.2d 1106 (7th Cir.1978), *cert. denied,* 444 U.S. 870, 100 S.Ct. 146, 62 L.Ed.2d 95 (1979). Although the passage of time may have prejudiced class members' ability to pursue their claims, individually or as a class, there is a greater chance of prejudice if I bind them to the result of a lawsuit brought by a representative whom I believe to be inadequate and whose claims I believe to be atypical.

### DEFENDANTS' MOTION FOR PARTIAL SUMMARY JUDGMENT

■ All parties concede that Colo.Rev. Stat. § 13–80–101(1)(c) (1987 Repl.Vol.) (formerly Colo. Rev. Stat. § 13–80–109 [1973]) supplies the three-year limitations period applicable to plaintiff's claim. *See Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 210 n. 29, 96 S.Ct. 1375, 1389 n. 29, 47 L.Ed.2d 668 (1976) (in the absence of a federal statute of limitations applicable to private actions under section 10[b] and rule 10b–5, law of forum state applies); *Ebrahimi v. E.F. Hutton & Co., Inc.,* 852 F.2d 516, 520 (10th Cir.1988) (three-year period contained in section 13–80–109 applicable to 10[b] actions). This circuit applies federal tolling rules to 10(b) actions. These rules provide that the limitations period does not begin to run until the fraud is discovered, or in the exercise of reasonable diligence should have been discovered. *Aldrich v. McCulloch Properties, Inc.,* 627 F.2d 1036, 1041 (10th Cir.1980).

Plaintiff contends that he was unaware of the alleged fraud until after October 1, 1982, in part because defendants attempted to conceal it. Plaintiff also convincingly contends that, even by exercising reason-

able diligence, he could not have discovered that defendants' representations were fraudulent until after October 1, 1982. Therefore, because his complaint was filed on October 1, 1985, it is not barred.

Defendants do not dispute plaintiff's factual contention that he could not have discovered the fraud before October 1, 1982. They argue, rather, that all of the allegations relating to misrepresentations occurring before October 1, 1982, should be stricken, based on the rule set forth in *In re Data Access Systems Securities Litigation*, 843 F.2d 1537 (3d Cir.1988), *cert. denied*, 488 U.S. 849, 109 S.Ct. 131, 102 L.Ed.2d 103 (1988). In *Data Access*, the en banc court overruled substantial previous precedent to hold that the limitations period applicable to section 10(b) and rule 10b–5 cases should be determined by federal, not state, law. The court further held that the limitations period applicable to private rights of action under other provisions of the Securities and Exchange Act of 1934 (sections 9[e], 16[b], 18[c]) would apply to 10(b) cases as well. Under this rule, claims under section 10(b) are barred if not brought within one year from discovery; and all claims, discovered or not, are barred after three years from the date of the alleged violation.

Defendants apparently urge the court to adopt *Data Access* piecemeal. They concede that Colorado's three-year limitations period is applicable, but argue that the court should disregard the Tenth Circuit's tolling precedents and adopt *Data Access's* strict three-year limitation, which eliminates any tolling whatsoever. Neither *Data Access*, nor the construction of it urged by defendants, is the law in this circuit. As one district court has recognized in *Marchese v. Nelson*, 700 F.Supp. 522 (D.Utah 1988), *Data Access* is well-reasoned and, if adopted, would promote uniformity in the limitations period for federal securities actions. As the Third Circuit argued, it appears that the Supreme Court might endorse such a uniform application, if it were a matter of first impression. *See Agency Holding Corp. v. Malley–Duff & Assocs., Inc.*, 483 U.S. 143, 107 S.Ct. 2759, 97 L.Ed.2d 121 (1987) (uniform federal limi-

tations period adopted for actions under RICO); *DelCostello v. International Bhd. of Teamsters*, 462 U.S. 151, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (uniform federal limitations period adopted for actions under the National Labor Relations Act). Defendants' arguments, however, can only be addressed by the Tenth Circuit, because its current rule requires denial of the motion for partial summary judgment.

## REMAINING MOTIONS

My decision to decertify the class makes plaintiff's motion to bifurcate the trial and defendant Fisher's motion to amend the order approving the manner and form of notice to the class moot. Accordingly, it is hereby

ORDERED as follows:

1. defendants' motion for partial summary judgment on the statute of limitations is denied;

2. defendants' motion to decertify the class is granted;

3. plaintiff's motion to bifurcate the trial is denied as moot;

4. defendant Fisher's motion to amend the manner and form of providing notice to the class is denied as moot; and

5. plaintiff shall prepare and provide notice of decertification at the earliest possible time to all members of the class to whom notice has previously been sent. The notice shall be submitted to the court for approval before sent.