Joseph S. BEALE, on behalf of himself and all others who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark Financial Corporation common stock on or after April 1, 1993 and on or before November 1, 1993, Plaintiff,

v.

EDGEMARK FINANCIAL CORPORATION, Roger A. Anderson, and Charles A. Bruning, Defendants.

No. 94 C 1890.

United States District Court, N.D. Illinois, Eastern Division.

May 26, 1995.

Reuben L. Hedlund, Edward F. McCormack, Edwin L. Durham, Charles A. Tausche, Hedlund, Hanley & John, Chicago, IL, for Plaintiff.

Paul E. Freehling, Victoria Perette Pappas, D'Ancona & Pflaum, Chicago, IL, Daniel R. Gravelyn, Warner, Norgross & Tudd, Grand Rapids, MI, for Defendants.

## ORDER

ANDERSEN, District Judge.

On May 26, 1995, Magistrate Judge Martin Ashman filed and served upon the parties his Report and Recommendation concerning plaintiff Joseph S. Beale's ("Beale") motion for class certification pursuant to Fed. R.Civ.P. 23. Defendants EdgeMark Financial Corporation, Roger A. Anderson and Charles Bruning ("defendants") have filed objections to the recommendation on the class certification issue.

On July 15, 1994, Beale filed a two-Count first amended class action complaint against defendants on behalf of himself and a class defined as "all persons who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark common stock on or after April 1, 1993 and on or before November 1, 1993." In Count I, Beale alleges that defendants violated the Securities and Exchange Act of 1934, 15 U.S.C. § 78j(b), by withholding material information related to the sale of EdgeMark stock. In Count II, Beale alleges the same facts under a theory of equitable fraud.

A district court must make a de novo determination of any portion of the Report and Recommendation to which specific written objection has been made. Fed.R.Civ.P. 72(b); 28 U.S.C. § 636(b)(1). The district court may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. *Id.*

Specifically, defendants set forth four reasons why we should not adopt the Magistrate Judge's Report. We disagree with defendants on all four.

First, defendants argue that there exists a "standing" and "causation" defense to one of

the individual damage claims of the class representative that is unique to him which 'will become the focus of the litigation and detract from efforts on behalf of the other putative class members." (Objections, at 2–3). Magistrate Judge Ashman correctly rejected this argument and concluded that "Beale's standing as a 'forced seller' has been unchallenged by [d]efendants and this fact also means that at least part of Beale's claim is typical of those of other class members.... For these reasons, this Court holds that on the issue of lack of standing, [d]efendants have no unique defense based on standing." (R & R, at 10–11). Moreover, Magistrate Judge Ashman noted that defendants had not and could not cite any case for the proposition that a class representative's lack of standing on only one of his claims constitutes an unique defense sufficient to render all of his claims atypical, thus defeating certification. (R & R, at 11). Accordingly, Magistrate Judge Ashman correctly held defendants have no unique defense based on standing.

Second, defendants contend that Beale is an inadequate class representative because he has "disabling conflicts of interest" involving (1) a claim by him against EdgeMark in other litigation (which has been dismissed), (2) a claim against Harris Bank in another lawsuit, and (3) a large claim against him, again in another lawsuit, by a subsidiary of EdgeMark. Defendants argue that these claims will cause the class representative to "have a natural inclination to favor his other claims over those of the putative class members." (Objections, at 5). Further, defendants argue that Beale "will be naturally inclined to calculate the impact of every move in this litigation, including settlement discussions, on his substantial liability in the other actions." (Objections, at 6). Magistrate Judge Ashman properly rejected these arguments and concluded, *inter alia,* that the suits involve "different causes of action; and ... any potential recovery against Harris Bank would not adversely affect the potentially 'limited resources' available to the class in this case." (R & R, at 18). We agree with Magistrate Judge Ashman. Moreover, as Magistrate Judge Ashman indicated, this court will have to approve any settlement and will, therefore, insure that Beale does not shirk his duties as a class representative even though his individual claim may suffer.

Third, defendants claim that Beale's adequacy as a class representative is undermined because his counsel, who represents another EdgeMark Director in another case, has failed to join that Director, Robert Podesta, as a defendant in this action. Magistrate Judge Ashman properly found, citing to *Dubin v. Miller,* 132 F.R.D. 269, 272–73 (D.Colo.1990), that "the evidence available at this time is insufficient to support a joinder of Podesta as a defendant and therefore [d]efendants' challenge ... based on this nonjoinder is not well taken at this time." (R & R, at 17 n. 6).

Finally, defendants object to the Magistrate Judge's Recommendation to certify the class for Count II which alleges equitable fraud under Illinois law. Defendants state that the court has "repeatedly held that actions for fraud under Illinois law are inappropriate for class certification." We disagree. *See, Weiss v. Winner's Circle of Chicago,* 1992 WL 220686 (N.D.Ill.1992); *Heastie v. Community Bank of Greater Peoria,* 125 F.R.D. 669, 677 (N.D.Ill.1989); *In re VMS Securities Litigation,* 136 F.R.D. 466, 480 (N.D.Ill.1991); *Alexander v. Centrafarm Group N.V.,* 124 F.R.D. 178, 186 (N.D.Ill. 1988). In *Weiss,* Judge Holderman certified a class in an action which contained both federal and state claims. Similar to *Weiss,* this action contains both state and federal claims which involve the same failure to disclose or incomplete disclosure to all shareholder members of the class. Therefore, Magistrate Judge Ashman properly certified the class as to Count II.

The Magistrate Judge's Report meticulously went through each of the four elements required under Fed.R.Civ.P. 23(a) for class certification and properly found that this action satisfies numerosity, commonality, typicality and adequacy of representation. Further, the Magistrate Judge's Report correctly found, pursuant to Fed.R.Civ.P. 23(b)(3), that "the questions of law or fact common to the members of the class predominate over any questions affecting only indi-

vidual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy." (R & R, at 19).

After careful consideration of the above-referenced motion for class certification, the applicable memoranda of law, other relevant pleadings, the Magistrate Judge's Report, and the defendant's objections thereto, this court hereby adopts in full the Magistrate Judge's Report and Recommendation.

Accordingly, the court orders that plaintiff's motion for class certification is granted.

It is so ordered.

Dated: August 1, 1995

### REPORT AND RECOMMENDATION

ASHMAN, United States Magistrate Judge.

This case is presently before the Court on Plaintiff Joseph S. Beale's ("Beale") motion for class certification pursuant to FED. R.CIV.P. 23.

#### I. Background

On July 15, 1994, Beale filed a two-count first amended class action complaint against EdgeMark Financial Corporation, Roger A. Anderson and Charles A. Bruning ("Defendants") on behalf of himself and a class defined as "all persons who sold, relinquished rights in or were deprived of ownership of shares of EdgeMark common stock on or after April 1, 1993 and on or before November 1, 1993." In Count I, Beale alleges that Defendants violated the Securities Exchange Act of 1934 (15 U.S.C. § 78j(b)) ("the Act") when they schemed to withhold material information related to the sale of Edgemark stock. In Count II, Beale alleges the same facts under a theory of equitable fraud. Beale seeks to have this action proceed as a class action and Defendants object.

#### II. Facts

In considering a motion for class certification, the substantive facts as alleged in the complaint are taken as true, but the merits of the case are not evaluated. *Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 177–78, 94 S.Ct. 2140, 2152–53, 40 L.Ed.2d 732 (1974); *Allen*

*v. City of Chicago*, 828 F.Supp. 543, 550 (N.D.Ill.1993). Briefly, Beale makes the following allegations: EdgeMark Financial Corporation ("EdgeMark") was a Delaware corporation and a multi-bank holding company with its principal place of business in Chicago, Illinois. (Amended Complaint, ¶¶ 4, 6.) Defendants Roger A. Anderson and Charles H. Bruning were both directors and officers of EdgeMark. (*Id.* at ¶ 4.) Merchandise National Bank ("MNB") was a wholly owned subsidiary of EdgeMark. (*Id.* at ¶ 5.) Beale was a shareholder of EdgeMark and a substantial borrower from MNB. (*Id.* at ¶¶ 3, 25.) In fact, Beale had pledged certain EdgeMark stock he owned to MNB. (*Id.* at ¶ 25.) EdgeMark stock was traded over the NASDAQ market in 1993. (*Id.* at ¶ 7.)

Beale alleges that, commencing April 1, 1993 and continuing to November 1, 1993 (the "Class Period"), Defendants undertook a number of steps to sell EdgeMark. Defendants retained a well-known investment banking firm, Donaldson, Lufkin & Jenrette Securities Corporation ("DLJ"), which forecasted that EdgeMark could be sold at a price in excess of $35 per share, and reported on potential acquisition partners. (*Id.* at ¶¶ 16, 19, 20, 23.) Defendants eventually decided to accept an offer from Old Kent Financial Corporation ("OKFC") to purchase EdgeMark for $42.79 per share, and announced the sale on November 2, 1993. (*Id.* at ¶¶ 26, 27, 46.) Beale alleges that Defendants decided to and did conceal their efforts to sell EdgeMark in order to manipulate the market price of EdgeMark stock. (*Id.* at Introduction and ¶ 33.)

Beale further alleges that EdgeMark made several misleading statements during the Class Period: In a quarterly report to shareholders, EdgeMark reported improved financial results and a decrease in book value per share but did not disclose efforts underway to sell the company. (*Id.* at ¶¶ 12, 20 and 26.) In addition, in connection with the announcement of Michael C. Braun's promotion to President of MNB, Defendants announced that they were looking forward to Braun's leadership "as we continue our profitable growth" but did not disclose EdgeMark's

retention of an investment banker. (*Id.* at ¶ 17.)

Beale's alleged damages are based upon MNB's forced sale, at $22.00 per share, of Beale's 4,000 shares of EdgeMark stock pledged by Beale as collateral for a loan (*Id.* at ¶ 25), and upon Beale's non-exercise of a right to reacquire 197,357 shares of Edge-Mark stock from the Harris Trust and Savings Bank ("Harris Bank"). (*Id.* at ¶¶ 22, 25.) Beale asserts that he failed to reacquire or redeem the EdgeMark stock from Harris Bank because of his reliance on EdgeMark reports and news releases made on April 15, June 3, and July 20, 1993 (*Id.* at ¶¶ 12, 17, 20) and on his assumed integrity of the market. (*Id.* at ¶ 22.) Based on these claims, Beale submits that he meets the requirements of FED.R.CIV.P. 23(a).

### III. *Class Allegations*

Beale asserts that there are three questions of law and fact common to all class members:

1. Whether the defendants perpetrated a fraud upon the Class by deliberately withholding material information affecting the value of the Class Members' EdgeMark stock, and/or deliberately omitted those facts which made other statements made at the time misleading, and which perpetrated a fraud upon the market.

2. Whether the acts of defendants violated *inter alia*, federal statutory law and the common law of the States of Illinois and Delaware; and

3. Whether the Class has been damaged, and if so, the nature of relief to which each member of the Class is entitled.

### IV. *Analysis*

To obtain class certification, a plaintiff must meet the requirements of FED.R.CIV.P. 23. There are two steps to an analysis of a plaintiff's compliance with these requirements. First, under FED.R.CIV.P. 23(a) a plaintiff must show:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representatives will fairly and adequately protect the interests of the class.

These requirements are commonly known as the prerequisites of numerosity, commonality, typicality and adequacy of representation. *General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156 fn. 13, 102 S.Ct. 2364, 2370 fn. 13, 72 L.Ed.2d 740 (1982).

Second, an action may be maintained as a class action if the four prerequisites are satisfied and one of four situations exist as set forth in 23(b)(1)(A), (b)(1)(B), 23(b)(2), or 23(b)(3). In this case, Beale asserts that his action satisfies 23(b)(3). FED.R.CIV.P. 23(b)(3) allows a class action where:

the questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy. The matters pertinent to the findings include: (A) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; (D) the difficulties likely to be encountered in the management of a class action.

Beale bears the burden of demonstrating that he meets these requirements for class certification. *Falcon*, 457 U.S. at 161, 102 S.Ct. at 2372. This Court will address each element separately.

### A. *NUMEROSITY*

■ Under FED.R.CIV.P. 23(a)(1), the proposed class must be so numerous that joinder of all its members would be impracticable. While courts have held that plaintiffs need not specify the exact number of persons in the class, they cannot rely on conclusory allegations or speculation as to the size of the purported class in order to prove numerosity. *Marcial v. Coronet Ins. Co.*, 880 F.2d 954,

957 (7th Cir.1989). This is not known as a demanding requirement, and, while Beale does not specify an exact number of class members, the purported class appears to satisfy this prerequisite. In fact, Defendants do not contest the fact that EdgeMark had over 1.5 million shares outstanding to nearly 500 shareholders during the pertinent period.

### B. *COMMONALITY*

■ FED.R.CIV.P. 23(a)(2) requires that there be questions of law or fact common to the class. Generally, a common nucleus of operative fact is enough to satisfy this requirement. *Rosario v. Livaditis,* 963 F.2d 1013, 1018 (7th Cir.1992). Beale asserts that the common nucleus of operative fact in this case is the alleged withholding of material information and each Defendant's participation in the fraudulent scheme. Defendants do not contest the sufficiency of common questions of fact or law in this case. Therefore, the commonality requirement has been satisfied.

### C. *TYPICALITY*

■ The question of typicality is closely related to that of commonality in that both ensure that the interests of the representative align with the interests of the class. *Hanon v. Dataproducts Corp.,* 976 F.2d 497, 508 (9th Cir.1992). The Seventh circuit has held that a "plaintiff's claim is typical if it arises from the same event or practice or course of conduct that gives rise to the claims of other class members and his or her claims are based on the same legal theory." *Rosario,* 963 F.2d at 1018 quoting *De La Fuente v. Stokely–Van Camp Inc.,* 713 F.2d 225, 232 (7th Cir.1983). The test of typicality is "whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Hanon,* 976 F.2d at 508 quoting *Schwartz v. Harp,* 108 F.R.D. 279, 282 (C.D.Cal.1985). Similarly, concerned that absent class members may suffer if the representative becomes preoccupied with defenses unique to himself, courts have refused class certification where a putative class representative may be subject to unique defenses which threaten to become the focus of the litigation. *Hanon,* 976 F.2d at 508.

Defendants contend that Beale's claims do not satisfy the typicality requirement because his claims are subject to unique defenses related to standing, reliance and loss causation. Defendants further suggest that these defenses will become the major focus of the litigation. In response, Beale counters that the defenses attack the merits of his claims, will not become the focus of the litigation, and do not bar certification.

#### 1. *Standing*

■ Defendants argue that Beale's claim under the Securities Exchange Act is subject to a unique defense: Standing. Defendants assert that Beale lacks standing to sue under the express language of the Act. The Act directs, in pertinent part that:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce or of the mails, or of any facility of any national securities exchange—

> \*    \*    \*    \*    \*    \*

> (b) To use or employ, *in connection with the purchase or sale of any security* ..., any manipulative or deceptive device or contrivance in contravention of such rules and regulations as the Commission may prescribe as necessary or appropriate in the public interest or for the protection of investors. (Emphasis added.) (15 U.S.C. § 78j(b)).

Furthermore, Rule 10b–5 promulgated by the Securities and Exchange Commission commands:

> It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,

> a) to employ any device, scheme or artifice to defraud,

> b) to make any untrue statement of material fact or to omit to state a material fact necessary in order to make the statements made, in light of the circumstances

under which they were made, not misleading, or,

c) to engage in any act, practice, or course of business which operates or would operate as fraud or deceit upon any person *in connection with the purchase or sale of any security.* (Emphasis added.) (17 C.F.R. § 240.10b–5.)

Defendants emphasize that the bulk of Beale's claim rests on his alleged "right to reacquire" 197,357 shares of stock held by Harris Bank ("Harris stock"), and argue that Beale's "right to reacquire" is the equivalent of an option. Courts have long held that a failure to exercise an option on stock does not constitute a sale or purchase under Rule 10b–5. *See Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 731, 749, 95 S.Ct. 1917, 1932, 44 L.Ed.2d 539 (1975). Defendants conclude that since Beale's major claim is subject to a standing defense, the issue of standing will necessarily become a major issue at trial.

Beale counters with three responses. First, there is no case law that holds that Beale's "right to reacquire" is an option. Second, there is no case law that holds that lack of standing of the putative representative is a valid basis for denying class certification. Third, Beale also claims damages based on 4,000 shares of his actually owned EdgeMark stock pledged to MNB and sold by MNB to liquidate a loan. Because of its opinion with regard to Beale's third response, as set out hereafter, this Court deems it unnecessary to address Beale's first and second response.

This Court will address Beale's third response.

Beale contends, without objection from Defendants, that, regardless of his standing based on the Harris stock, he qualifies as a "forced seller" based on the 4,000 shares of EdgeMark stock he pledged as collateral to MNB which MNB subsequently sold. The "forced seller" doctrine broadly construes the term "sale" in Rule 10b–5 and considers shareholders to be sellers under the Act when the nature of the investment had been fundamentally and involuntarily changed even though they had not actually sold or purchased shares of stock. *See Ray v. Karris*, 780 F.2d 636, 640 fn. 1 (7th Cir.1985) citing *Vine v. Beneficial Finance Co.*, 374 F.2d 627, 634 (2d Cir.), *cert. denied*, 389 U.S. 970, 88 S.Ct. 463, 19 L.Ed.2d 460 (1967).[1]

For purposes of this motion for class certification, Beale's standing as a "forced seller" has been unchallenged by Defendants and this fact alone means that at least part of Beale's claim is typical of those of other class members. But Defendants argue that the magnitude of Beale's other claims based on his "option" to reacquire the shares held by Harris Bank is such as to overwhelm the litigation. However, Defendants cite no case law, nor has this Court located any, to support their contention that a lack of standing based on one claim automatically renders all other claims in which standing is unchallenged, atypical and inappropriate for class certification. For these reasons, this Court holds that on the issue of lack of standing, Defendants have no unique defense based on standing.[2]

## 2. *Reliance*

Defendants next contend that Beale's claims are subject to unique reliance-based defenses.[3] Specifically, since the entire com-

---

1. The *Ray* holding is also instructive in defining the scope of the "forced seller" doctrine. In that case the court did not apply the "forced seller" doctrine to a plaintiff whose claim was found to have rested on a diminution in value of equity interest rather than a fundamental involuntary change in the nature of his investment. For this reason, the court found that plaintiff's claim fell "outside the scope of the "forced seller" doctrine. *Ray*, 780 F.2d at 640 fn. 1. In this case, without now determining the issue of standing, the "forced seller" doctrine appears to have some applicability. The Court notes that Beale's claim related to the stock sold by MNB appears

more like a fundamental and involuntary change in investment than a diminution in value.

2. This Court need not and does not now rule on Beale's standing. The ruling here is made in the context of the pending motion only.

3. Defendants' memorandum in opposition to class certification mainly addresses the fraud on the market claim. However, in a footnote on the last page, Defendants alternatively argue that the equitable fraud claim, Count II, is not properly a class action because individual issues of reliance would predominate over any common questions

plaint is based on allegations of a fraudulent scheme and withheld information, a critical issue will be reliance: in Count I reliance on market integrity; and, in Count II reliance on deliberate concealment of material facts.

### a. Reliance on Market Integrity

■ Defendants suggest that Beale's intimate involvement with EdgeMark, especially with Robert Podesta, former EdgeMark director, infers that Beale could have had access to non-public information. Such access would obviously undermine any claim of reliance on market integrity. Beale counters that, at the class certification stage the only facts before the court are those well-pleaded in the complaint. There are no allegations of such insider information in the complaint nor have the Defendants produced any affidavits asserting such information. This Court agrees. Speculation regarding access to non-public information, in the absence of any allegations or evidence of such information does not impact on the issue of reliance. Whether or not such a reliance was justified is an issue that goes to the merits of the claims. Such a defense does not affect the typicality of the claims, at least at the certification stage.

Defendants next urge the Court to make findings similar to those contained in *Hanon,* wherein the court, while noting that the defense of non-reliance generally attacks the merits of a case and is not a proper basis for denial of class certification, nevertheless considered evidence related to the underlying merits and also impacted in Rule 23 requirements in a motion for class certification. *Hanon,* 976 F.2d at 509. Hanon involved a fraud on the market claim by a putative representative whose reliance on market in-

tegrity, the court found, would be subject to serious dispute due to the representative's extensive securities litigation experience, relationship with his attorneys, practice of buying minimal shares of stock in numerous companies and uneconomical purchase of only ten shares of defendant's stock. *Hanon,* 976 F.2d at 508. The court found that these circumstances created a unique situation which made it "predictable that a major focus of the litigation will be on a defense unique to him" such that the complaint failed the typicality requirement. *Hanon,* 976 F.2d at 509.

While Count I of this complaint involves a fraud on the market claim, it is being brought by the largest shareholder of Edge-Mark who alleges that he relied on Edge-Mark reports which were disseminated to all shareholders. There is no allegation or evidence that Beale has extensive securities litigation experience[4] nor is there any other indicia of the potential impropriety evident in *Hanon* which would undermine the credibility of Beale's reliance on market integrity.

Therefore, the issue of Beale's reasonable reliance on market integrity addresses the merits of his claim and is not an appropriate basis on which to deny class certification.

### b. Individual Reliance

■ In Count II, Beale alleges a claim for equitable fraud. A significant element of this cause of action is reasonable reliance on a defendant's misrepresentation or concealment of material information.[5] Defendants suggest that, since Illinois law requires that each plaintiff must show reasonable and individual reliance in common law fraud cases (*Margolis v. Caterpillar, Inc.,* 815 F.Supp.

---

raised by the allegations. The Court will consider reliance-based arguments against both counts in this section.

**4.** The only other cases in which Beale has shown to be involved relate to the facts of this case. Most importantly, Beale has dismissed both its suit involving Harris Bank and its counterclaim against MNB. At oral argument counsel for Beale represented on the record that any further similar state court action would be preempted by this suit. *See* discussion under Adequacy of Representatives *infra.*

**5.** The elements of equitable fraud are:

1. a) either a false representation ... or b) a deliberate concealment of some material fact or c) silence in the face of a duty to speak;
2. an intent on the part of the defendant to induce the plaintiff to act or refrain from acting;
3. action or inaction of the plaintiff in justifiable reliance on the defendant's representation, concealment or silence; and
4. damage to the plaintiff resulting from such reliance.

*Toner v. Allstate Ins. Co.,* 829 F.Supp. 695, 703 (D.Del.1993).

1150, 1153 (C.D.Ill.1991)), class certification is inappropriate for such a fact-sensitive cause of action. The complaint involves a fixed set of alleged circumstances, alleged concealment and alleged misleading statements. As in *Heastie v. Community Bank of Greater Peoria*, 125 F.R.D. 669 (N.D.Ill. 1989) and *Weiss v. Winner's Circle of Chicago, Inc.*, No. 91 C 2780, 1992 WL 220686 at *4 (N.D.Ill. Sept. 3, 1992), even if some individual issues of reliance exist, the fixed limited circumstances applying to each member of the class simplify the issue and therefore this Court finds that the individual issues of reliance do not predominate.

For these reasons, this Court finds the Defendants' reliance-based defenses do not block certification of the class.

### 3. *Loss Causation*

█ Defendants' final asserted defense relating to typicality concerns loss causation. In 10b–5 fraud on the market claims, courts have consistently held that a plaintiff must allege facts suggesting that but for defendants wrongdoing, the plaintiff would not have suffered the harm of which he complains. *Roots Partnership v. Lands' End Inc.*, 965 F.2d 1411, 1419 (7th Cir.1992), citing *Bastian v. Petren Resources Corp.*, 892 F.2d 680, 685 (7th Cir.), *cert. denied*, 496 U.S. 906, 110 S.Ct. 2590, 110 L.Ed.2d 270 (1990). Defendants contend that Beale's claims are subject to unique loss causation defenses because they are based on Beale's failure to redeem or reacquire EdgeMark stock.

Specifically, Defendants suggest that loss causation in this case will be impossible to show because Beale has admitted in state court pleadings that he could not raise sufficient funds to exercise his option for the stock held by Harris Bank. However, once again at this class certification phase, the Court must consider the well-pleaded facts of the complaint. In so doing, this Court finds that Beale has adequately alleged loss causation by alleging that Beale would not have sold or permitted to be sold his shares of EdgeMark stock had he been aware of the information withheld by Defendants. In any event, even if the state court complaint is construed to contain admissions that Beale was "unable to raise the funds necessary to

exercise the option held under contract with the Harris" as argued by Defendants, Defendants do not address the fact that Beale owned other EdgeMark stock pledged to MNB. There is no argument of lack of loss causation regarding the stock pledged to MNB. (*See* Complaint, ¶ 50.)

For these reasons, Defendants' loss causation defense fails to affect the typicality requirement. Therefore, this court finds that, considering the well-pleaded facts of Beale's complaint, each of the asserted defenses attack the merits of Beale's claims and do not affect the typicality required for class certification.

### D. *ADEQUACY OF REPRESENTATION*

█ The final prerequisite concerns the adequacy of representation. This involves a two-part inquiry of: 1) whether the named plaintiffs' counsel will adequately protect the interests of the class; and 2) whether there exists any antagonism between the representative and other class members. *General Tel. Co. of the Northwest v. E.E.O.C.*, 446 U.S. 318, 331 100 S.Ct. 1698, 1707, 64 L.Ed.2d 319 (1980), *Secretary of Labor v. Fitzsimmons*, 805 F.2d 682, 697 (7th Cir. 1986). This requirement is linked to the commonality and typicality requirements. *Falcon*, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. The "requirement is typically construed to foreclose the class action where there is a conflict of interest between the named plaintiff and the members of the putative class." *General Tel.*, 446 U.S. at 331, 100 S.Ct. at 1707. Defendants do not contest the competence of Beale's counsel; thus, the inquiry moves to step two.

Defendants argue that Beale's interests are antagonistic to the interests of the rest of the class in two respects: First, Beale's state court suit against Harris Bank, Circuit Court of Cook County, Case Number 94 L 2675, for recisionary damages for the wrongful retention and exchange of Beale's and Podesta's 197,357 shares of EdgeMark stock; and second, Beale's counterclaim against MNB in state court, Circuit Court of Cook County, Case Number 93 L 11178, for damages relat-

ed to the windfall allegedly garnered by MNB when it sold Beale's 4,000 shares of EdgeMark stock held by MNB as collateral for a loan collection of which it was seeking in the main complaint.[6]

Beale asks the Court to take judicial notice of the fact that Beale has dismissed its claims against EdgeMark, Bruning and Anderson in the 94 L 3675 suit and argues that the remaining claims against Harris Bank involve separate issues against a defendant not a party to this suit. Defendants still profess concern that potential large claims against Harris Bank could lead Beale to focus his resources on discovering evidence for that case.

This Court finds that Beale's adequacy as a representative in this action is not undermined by Beale's state court case against Harris Bank. First, Beale's claims are potentially greater in the class suit (combining the Harris stock and the MNB stock); second, these suits involve different defendants, different facts, different duties and different causes of action; and, third, any potential recovery against Harris Bank would not adversely affect the potentially "limited resources" available to the class in this case.

Likewise, counsel for Beale asks the Court to take judicial notice of the order dismissing Beale's counterclaim against MNB. Having taken such notice, it is clear that Beale does not have any pending claims against MNB at this time, although he is still involved in that action as a defendant in a suit on a promissory note. Despite the dismissal of the counterclaim without prejudice, counsel for Beale averred on the record during oral argument on the instant motion that, to the extent Beale's state law claims mirror those involved in this suit, as long as this suit re-

mains pending, any state court suits would be precluded.

For these reasons, this court finds that Beale does not have interests adverse to the putative class and that the adequacy-of-representation requirement has been satisfied.

### E. RULE 23(b) REQUIREMENTS

Having thus found that Beale has satisfied the requirements of 23(a), the court must consider whether Beale has also met his burden regarding 23(b). Rule 23(b)(3) permits class certification if "the court finds that questions of law or fact common to the members of the class predominate over any questions affecting only individual members, and that a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

As discussed above, the common questions of law and fact abound in this case. Specifically, each plaintiff's claim hinges on the same alleged fraudulent scheme to withhold information and the same alleged action or non-action of the Defendants. The only individual issues involve questions of damages; however, the need to calculate individual damages has not been held to bar a class action. See Bresson v. Thomson McKinnon Securities, Inc., 118 F.R.D. 339, 343 (S.D.N.Y.1988). In fact, Defendants have made no challenge to the 23(b) requirement.

This court finds that both the Securities Act claim and the equitable fraud claim should be class certified. Such certification is consistent with the policies underlying each cause of action: to protect individuals from fraudulent activity. The essential claims of each class member rest on resolution of the same issues of law and fact, and

---

**6.** Defendants also question the adequacy of representation on the ground that Podesta, as a former director of EdgeMark, is not only not named as a defendant in the class suit, he is a named co-plaintiff with Beale in this state action in which Beale's same attorneys represent them. Defendants argue that if Podesta is made a defendant in this action, then Beale's attorneys could not vigorously pursue a claim against a client, Podesta. Defendants cite the holding of *Dubin v. Miller,* 132 F.R.D. 269, 272–73 (D.Colo. 1990), which held that a putative representative who fails to provide persuasive reasons for the non-joinder of a former director with whom he has a personal relationship was an inadequate class representative. However, in this case the evidence has been unrefuted that Podesta dissented in EdgeMark's decision to proceed with the scheme and eventually resigned. The evidence available at this time is insufficient to support a joinder of Podesta as a defendant and therefore Defendants' challenge to Beale's adequacy as a class representative or to the competency of Beale's counsel based on this non-joinder is not well taken at this time.

given the potential large number of small shareholders, a class action is the only fair and economical method of resolving this dispute.

### V. Conclusion

For the aforementioned reasons, this court finds that Beale has satisfied the requirements of Rule 23(a) and Rule 23(b) and hereby recommends that this action be certified as a class action.