[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION ON PLAINTIFF'S MOTION FOR CERTIFICATIONAS A CLASS ACTION
The plaintiff in this case has moved that he be authorized to maintain a class action on behalf of all engineering personnel in Labor Grades 43 through 51, inclusive, who were, or have been, employed on or since November 23, 1992 by United Technologies Corporation, Sikorsky Aircraft Division (Sikorsky) and who did not receive wages at an overtime rate of pay in accordance with § 31-76 (c) of the General Statutes. The parties have conducted extensive discovery in this matter and certain facts do not appear to be disputed. Sikorsky employs a large number of engineers which varies according to business needs but numbers about 1500. All employees are given labor grades and the employees are divided into two categories "hourly" and "salaried." "Hourly" employees are paid an amount each week equal to their hourly wage rate multiplied by the number of hours worked that week. "Salaried" employees are paid an annual salary in 24 monthly installments on the 15th and the last working day of each month. Employees in grades 1 through 30 are "hourly"; those grades in 31 through 51 are "salaried." "Salaried" employees are in turn divided into two categories "nonexempt" and "exempt." Sikorsky considers "exempt" employees exempt from certain requirements including the overtime pay provisions of § 31-76(c) of the General Statutes. All engineers are in labor grades 43 through 51.
Salaried employees including exempt employees are expected to work eight hours per day, five days per week, according to the Sikorsky manual which applies to these employees. Sikorsky has reporting systems whereby salaried employees report in the hours worked each day and the absences taken for each project each day. For several years Sikorsky has had a flexible working hours program. Under this policy, salaried employees have some choice as to when they work their required eight hours provided "core" hours between 9 a.m. and 3 p. m. are worked.
Exempt salaried employees can receive overtime pay but, in order to be eligible for such pay, the employee has to get a supervisor's approval — without it no overtime pay can be received. Under Sikorsky procedure and policy, to be eligible for overtime, exempt employees must work 45 hours of which five hours are not paid. Overtime is paid after that point at the base CT Page 3313 salary rate for a maximum of 13 hours — thus an engineer could work up to 58 hours. Sikorsky calculates the base salary rate for engineers by dividing the annual salary by 2080 (52 weeks times 40 hours per week.)
The plaintiff's statement of earnings for the pay period ending October 31, 1994 indicates that his base hour salary rate was $28.03 — this would be the rate the plaintiff would be paid at for overtime worked between the sixth and eighteenth for any one week. Time sheets indicate the plaintiff worked 106.3 hours of overtime in 1994 — 54.3 hours were not paid, 52 hours were paid at the base rate of $28.03. He received $1,457.56 in overtime. If the standards of § 31-76 (c) of the General Statutes were to apply of time and one-half of base salary for any overtime, the plaintiff would have been paid $4,468.85. Thus, if § 31.71(i) applied, the plaintiff was underpaid $3,011.29 in 1994.
Records of pay received by other engineers indicate that from December 1992 through May 1992 substantial overtime was accrued by the 1100 to 1200 engineers at Sikorsky. Company records can be produced to indicate whether a particular engineer worked overtime and, if so, how much. Information gathered through discovery indicates a substantial amount of this overtime for these engineers was not paid and the paid overtime was at only the base salary rate for these engineers.
These facts provide a sufficient background to begin the discussion of the propriety of class action authorization; other facts will be discussed as necessary.
1.
The requirements for a class action are set forth in Practice Book § 87:
 1. The class must be so numerous that joinder of all members is impracticable.
 2. There must be questions of law and fact common to the class.
 3. The claims or defenses of the representative party must be typical of the claims of the class. CT Page 3314
 4. The representative party must be able to fairly and adequately protect the interest of the class.
Under Practice Book § 88, the party moving for class certification must satisfy two further conditions. It must be shown that questions of law or fact common to members of the class predominate over any questions affecting only individual members and the proposed class action has to be found to be superior to other available methods for the fair and efficient adjudication of the controversy.[1]
The federal cases also talk of two additional so-called "preliminary" requirements for a class action not explicitly set forth in the rules. It is said that there must be a class and the class representative must be found to be a member of the class.Christman v. American Cyanamid Company, 92 F.R.D. 441, 446, 450
(N.D.W. Va., 1981). Frankly, these two preliminary requirements can add unnecessary confusion to the required analysis. Thus, as to the inquiry as to whether there is a class, that issue is really addressed by applying the explicit requirements of Practice Book §§ 87 and 88 — that is, are there questions of law and fact common to the class and, from a practical point of view, is the proposed class action a superior vehicle to other methods available to adjudicate the controversy? An answer to these questions will necessarily answer the question as to whether there is a class. As to whether the representative party is a member of the class, Newberg at § 2.0, Volume 1, points out that this alleged "requirement" is based on dicta in Baileyv. Peterson, 309 U.S. 31 (1969) to the effect that plaintiffs "cannot represent a class of whom they are not a part." Id. pp. 32-33. Newberg goes on to point out that this language merely refers to "threshold individual standing required for any action, including class actions." Newberg, § 2.10 at p. 2-65. The case of Allee v. Medrano, 416 U.S. 802 (1974) is cited by Newberg where the court says:
 A named plaintiff cannot acquire standing to sue by bringing his (sic) action on behalf of others who suffered injury which would have afforded them standing had they been named plaintiffs; it bears repeating that a person cannot predicate standing on injury which he (sic) does not share. Standing cannot be acquired through the back door of a class action.
Id. at pp. 828-829. Cf. Sosna v. Iowa, 419 U.S. 393 (1975). CT Page 3315
Newberg believes the "membership in the class" test has been misused. See Volume 1, § 2.11. He says "resort to this criterion is unnecessary at best, since it is fully encompassed by traditional standing and Rule 23 criteria, which directly focus on the proper issues involved . . . (resort to this test) . . . is a conclusory substitute for proper analysis and should probable be avoided altogether." Id. at p. 2-78. GeneralTelephone Co. of Southwest v. Falcon, 457 U.S. 147 (1981) seems to share Newberg's approach. Falcon points out that leaving aside a consideration of the merits of a case,[2] the party seeking class authorization must, by the nature of the claim made, bridge the gap between his or her claim and the existence of a class of persons who have suffered the same injury as the representative party — thus the representative party's claim and the class claims in effect must be shown to share common questions of law and the representative party's claim must be typical of the class claims.Id. pp. 155, et seq. The rubric used is that the class claims must be "fairly encompassed" within the representative's claim. Id. p. 158.
These observations in Falcon are in fact related to some of the same issues raised by questions of standing as regards class actions. Thus, it has been said that standing is not an abstract or technical concept but a practical one crated to ensure that courts and parties are not vexed by actions brought to vindicate nonjusticiable interests and that judicial decisions are forged under circumstances where each view is vigorously presented.Maloney v. Pac, 183 Conn. 313, 320 (1981). A court should not be asked to write advisory opinions and class action procedures should not permit the establishment of private attorney generals to vindicate the rights of others when either the proposed class representative has not been harmed or injured at all (standing) or the representative has not been harmed or injured in a way that encompasses the manner in which the proposed class is alleged to have been injured (commonality/typicality ala Falcon). The so-called "membership in the class" test contributes nothing to this analysis.
2.
Turning to the specific issue raised by this case, the court will first discuss what appears to be a major point of contention as to whether there should be class certification. Sikorsky does not dispute the fact that a class of 1500 members would meet the numerosity requirement, but Sikorsky does dispute that there is a class of employees and former employees who can state a claim for additional overtime payments. (Pp. 18-19, footnote 8 of Sikorsky CT Page 3316 10/17/96 brief.)
To put it another way, question is raised as to the commonality and typicality requirements as they relate to the question of whether there is in fact a properly defined class or whether the claims of any such class can be fairly encompassed in the claim of the purported class representative.
Two cases, for the court at least, underline the problem faced here. One is Avagliano v. Sumitomo Shoji America Inc.,103 F.R.D 562 (S.D. N.Y., 1984) and the other is Wagner v. Taylor,836 F.2d 578 (D.C. Cir., 1987). Both these cases accept the proposition that a plaintiff seeking class certification need not face a "mini-hearing on the merits." Cf. Meyer v. MacmillanPublishing Co., 95 FRD 411, 413 (S.D. N.Y., 1982). At the same time, each case had to accommodate another observation or proposition set forth in Falcon at 457 U.S., page 160 and ancillary to consideration of typicality and commonality; the court said that "the class determination generally involves considerations that are `enmeshed in the factual and legal issues comprising the plaintiff's cause of action.'" The tension between and understanding and application of these two propositions is often difficult, but Avagliano and Wagner offer some guidance on the issue.
In Avagliano, the court characterized the plaintiff's claim as one in which female employees of the defendant alleged that the defendant "has a preference for the employment of male Japanese Nationals in positions above the clerical level. They contend that Sumitomo's preferential employment practices constitute discriminatory treatment on the basis of sex and have a discriminatory impact on the bases of sex and national origin."103 FRD at p. 566. The court properly rejected an opposition to class certification that was based on an argument that the plaintiffs "failed to make a showing that they possess the requisite qualifications for the jobs from which they claim they have been illegally excluded." Id. pp. 574-757. The court rejected the notion that Falcon required any such showing. The court said it could not accept the defendant's argument for two reasons: (1) its "theory incorporates a merits inquiry in the class certification analysis;" and (2) "it overlooks the fact that the flexibility of the class certification device and the practice of defining sub-classes and of decertifying existing classes are both intended to accommodate the products of discovery and the trial process." Id. at p. 574. CT Page 3317
In Wagner, the plaintiff encountered a number of work problems at the Interstate Commerce Commission which he attributed to racial discrimination. In his complaint he cited instances of alleged discrimination against himself but the plaintiff's motion for class certification primarily alleged widespread discrimination against African-American workers at the Interstate Commerce Commission in hiring, promotion and other conditions of employment, all in violation of the 1964 Civil Rights Act. The plaintiff asked for certification of a plaintiff class comprised of all African-American professional employees in positions graded GS-9 and above and all African-American applicants for these positions. Discovery was completed and the plaintiff supplemented his motion for class certification with a citation of discrimination complaints filed in the equal employment office of the Interstate Commerce Commission and with statistics on African-American representation in the upper echelons of the agency. 836 F.2d at p. 583. The court referred to the language in Falcon that recognized that "racial discrimination by definition is class discrimination."457 U.S. at p. 157, but despite that, at page 159 went on to say that even in this area: "The mere fact that an aggrieved plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his (sic) standing to litigate on their behalf all possible claims of discrimination against a common employer." Relying on this language in the particular case before it, the Wagner court said that what is demanded from those seeking class certification "cutting across employment status or job categories is a `specific presentation' identifying the questions of law or fact common to the class representative and the members of the class proposed."836 F.2d at p. 589. The Wagner court then went on to discuss the requirements of Federal Rule 23 as they applied to the case before it.
The plaintiff has argued that he could find no case where, in ruling on a motion for class certification, a court, under Rule 23 analysis, found typicality but not commonality or commonality but not typicality — apparently, however, Wagner is that case. Thus, at 836 F.2d pp. 590-592, the Wagner court concluded the district court erred in failing to find typicality. But the court went on to reject the plaintiff's motion by concluding that not only was the plaintiff not an adequate representative but also because he could not establish the commonality requirement. The court said at pp. 594-95: CT Page 3318
 Plaintiffs seeking class certification are not required to prove the merits of their cases, but their presentations must be specific enough to allow the court to discern at least a rough outline of a class that properly can be certified.
 While the statistics relating to an identifiable promotional practice of ICC implied at least the possibility of common questions of fact, Wagner has not identified such a question, nor does one appear from the record. Instead of assembling bits of evidence into a coherent question of possible employer misconduct, he left the District Court with a combination of broad conclusory allegations of widespread discrimination and a jumble of numbers. Clearly, his presentation on this point has failed.
Thus, in this case for the purposes of this motion the merits of any claim cannot be weighed but the nature of the claim made by the plaintiff must be examined to determine whether the requirements of commonality and typicality are met. Broadly put, he claims to have worked over 40 hours and not to have been paid overtime — that is the bald allegation of the complaint. There are not many cases interpreting the overtime provisions of our statutes and the various exceptions to them; as noted, the action is brought pursuant to § 31-76 (c) of the General Statutes. Our statute has the same ameliorative purposes as the federal Fair Labor Standards Act, 29 U.S.C. § 201, et seq., so that it makes sense that certain rules adopted in the federal system should apply to the interpretation of our act. Thus, it has been held that exemptions to the federal act must be narrowly construed to further Congress' goal of providing broad federal employment protection. Mitchell v. Lublin, McGaughy Associates,358 U.S. 207, 211 (1958). Also, employers claiming an exemption not only have the burden of proof, Corning Glass Works v.Brennan, 417 U.S. 188, 196-97 (1974), but they also must show the employees fit "plainly and unmistakenly within the exemptions terms." Arnold v. Ben Kanowsky Inc., 361 U.S. 388, 392 (1960). There is no good reason not to adopt these standards in the application of our law as it applies to overtime. In fact, failure to do so would create a certain amount of chaos considering the overlapping and interrelationship contemplated between the FLSA and state law in this area. See very generally, 48A Am.Jur.2d., § 3811. CT Page 3319
But these burden shifting procedural rules directed toward the resolution of substantive issues that may arise under an act applying or not applying to particular cases depending on the interpretation given to statutes, statutory subsections and state regulations should have no bearing on the typicality and commonality analysis required, for example, under our procedural rules for determining the propriety of class actions. Any other position could lead to absurd results. There are numerous exceptions to the application of overtime provision in both state and federal statutes and regulations. If a large firm is posited with several categories of workers, salaried and hourly, professional and day laborers, certainly it could not be imagined that any one worker — say an hourly worker — could get class certification for all categories of employees on a simple claim that he or she worked more than 40 hours and did not get overtime and other employees, no matter what their type, also did not get overtime.
For example, on the question of typicality, in Long v. ThorntonTownship High School, 82 F.R.D. 186 (N.D. Ill., 1979), the court said typicality is satisfied when the representative party's claim "arises out of the same event or practice or course of conduct that gives rise to the claims of the class members and is based on the same legal or remedial theory." Id. p. 190. Which party has the burden of proof on a claim or an exception to a claim once the claim is raised has nothing to do with the separate issue raised by the question of the appropriateness of class certification, i.e., whether the claim in fact raised by the representative party arises out of the same event or practice that might give rise to the claims of a definable class.
 3. (A.)
What exactly are the legal claims being made here that could be said to be typical of claims of class members or share commonality with those claims? The court will discuss each claim made. The plaintiff has brought his case pursuant to § 31-76
(c) of the General Statutes. It provides that anyone working more than 40 hours must receive remuneration for such work at the rate of not less than one and one-half time the regular rate at which that person is employed. State law like federal law provides for exemptions to this overtime requirement. The net effect of §§31-76 (i)(e) and 31-58 (f) is that there shall be an exemption for so-called "professional" employees. State regulations further CT Page 3320 define employees employed in a "bona fide professional capacity" in terms of the nature of the duties they perform (e.g., is the employee a "professional" or an "executive") and in terms of the manner in which the employee is compensated — on a "salary" basis or an "hourly" basis. Application of both elements of the test determines whether the employee must pay overtime.
There is and can be no claim here that engineers at Sikorsky are not "professionals." The only possible claim can be is that they are not "salaried." Connecticut statutes and regulations do not define "salary basis" and there is no state appellate case law.
The reasoning of the federal cases defining this concept is, however, instructive.
At least where an employee's pay is actually docked, such a worker should be considered an hourly worker and he or she should not be considered a salaried employee, thus barring the receipt of overtime pay under § 31-76 (c). At Sikorsky, 260 engineers did have their pay docked. Donavan v. Carl's Drug Co.,703 F.2d 650, 652 (C.A. 2, 1983) stated that "a salaried professional employee may not be docked pay for fractions of a work day missed." Leaving aside the ramifications of the "subject of reduction" language which will be discussed later, the reasoning behind the just stated position where pay is actually docked is set forth in Abshire v. County of Kern, 908 F.2d 483, 486 (C.A. 9, 1990).
 Subjecting an employee's pay to deductions for absences of less than a day, including absences as short as an hour, is completely antithetical to the concept of a salaried employee. A salaried employee is compensated not for the amount of time spent on the job, but rather for the general value of services performed. It is precisely because executives are thought not to punch a time clock that the salary test for "bona fide executives" requires that an employee's predetermined pay not be "subject to reduction because of variations in the . . . quantity of work performed specially when hourly increments are at issue." (Same observations would apply to "professional employees.")
The plaintiff does not claim his pay was ever docked or that he was otherwise ever disciplined for failure to work an eight CT Page 3321 hour day or 40 hour week. Thus, he can make no claim himself based on typicality or commonality with any claim that the 260 Sikorsky employees who actually had their paychecks docked might make with regard to overtime. Apart from the bald assertion that the plaintiff, like all other engineers, did not receive statutorily authorized overtime, what theory is the plaintiff's claim based on? What is his theory of recovery? What common policy adopted by Sikorsky as to its engineers can be pointed to by the plaintiff as giving the basis for a claim by him and all members of the discrete class for which he seeks to be a class representative? The plaintiff refers to a line of cases exemplified by cases like Abshire v. County of Kern, supra, andMartin v. Malcolm Purnie, Inc., 949 F.2d 611 (C.A. 2, 1991) which followed Abshire, all as refined by the recent Supreme Court case of Auer v. Robbins, 117A S.Ct. 905 (1997). Abshire
relied on its interpretation of a regulation of the Secretary of Labor, 29 C.F.R. § 514.118 (a). That regulation said that an employee is paid on a salary basis when he or she receives pay in a predetermined amount "which amount is not subject to reduction
because of variations in the quality or quantity of the work performed" (emphasis added). The court held the employees in that case were not paid "on a salary basis" within the meaning of the regulations and thus were not exempt from overtime provisions — this was so even where the employee's pay was subject to potential deductions for absences of less than a day even though no actual deduction had been made. 908 F.2d at pp. 486-487.[3]
The court has serious question concerning the appropriateness of adopting the Secretary of Labor's position on the federal salary basis test. But assuming such trepidation is inappropriate on the theory that the merits of the class representative's claim is not subject to examination in the determination of the propriety of class action treatment, the questions remains — what claim can be said to be advanced by the plaintiff? Is an Abshire-Auer
type claim being made? Again, it is necessary to examine the language used by Justice Scalia — actual deductions are one way to defeat the salary basis exemption but, absent that, what is required is "a clear and particularized policy — one which `effectively communicates that deductions will be made in specified circumstances.'" Thus, "where an employer deliberately adopts apolicy rendering employees pay `subject to' deductions for unpermitted reasons, the frequency with which an employer is forced to apply that policy is irrelevant, Abshire v. County of Kern, 908 F.2d at page 488 (emphasis added). An employer should not be able to cry foul when the liabilities it faces were created by deliberately chosen CT Page 3322 language that encouraged worker expectations. This court has examined the salary employee manual given apparently to "executive" and "professional" employees — interestingly beyond the class of engineers the plaintiff seeks to represent as a class. The manual and nothing else presented to the court qualify as an explicit policy deliberately adopted by Sikorsky announcing to prospective and actual employees that their pay would be subject to deduction for variation in the quality or quantity of work performed. The flex time provisions certainly do not serve such notice. Besides the manual is directed at exempt and non-exempt salaried workers.
Neither can the fact that 260 engineers had some of their checks docked qualify as a "policy" in the terms discussed. There is nothing to indicate for example that the deductions were not unique to these workers because of some error on their or the company's part with regard to computation of their pay. There is no evidence that such deductions were the result of a purposely adopted policy to randomly make unauthorized deductions thus "effectively communicating" and meant to so communicate to all workers in the class (a la Auer at 117 S.Ct. page 911) that they in fact were not salary based professionals.[4] The point is that workers who suffered no such deductions can not make anAbshire-Auer argument against exemption from statutory overtime where there is no proof of a "settled policy" for such deductions, cf Kuchinskas v. Broward County, (S.D. Fla., 1993). If that is so, there can be no basis for class action qualification on the basis of an Abshire claim — the appropriate allegations cannot be made identifying any common theory applicable to an entire class let alone common questions of fact. Cf. Wagner v. Taylor, supra.
(B.)
The court will now discuss other claims raised or arguably raised by the plaintiff as a grounds for granting the motion for class certification.
At the conclusion of the Sikorsky brief the defendant raises several "claims" raised by the plaintiff pursuant to his §31-76 (c) action. These matters were not explicitly raised in the pleadings filed by the plaintiff neither were they thoroughly referenced in the briefs filed by the plaintiff. Assuming these matters raised in response to Interrogatories or at depositions can be considered in this class action application the court will CT Page 3323 discuss them.
(i.)
In a response to an interrogatory the plaintiff appears to say that he was not paid on a salary basis because his pay was subject to deduction from fringe benefits (such as leave time for hours not worked that were below the minimum requirement). The defendant makes persuasive arguments to the effect that even if there had been deductions of leave time taken from the plaintiff no deduction in "pay" would have been made because fringe benefits are not pay under the Wage Payment Act, Fulco v. NorwichRoman Catholic Diocesan Corp., 27 Conn. App. 800, 804 (1992) "the definition of wages is limited to remuneration for labor or services rendered, and does not include vacation pay which is compensation for loss of wages", id., p. 804. Several cases including Aaron v. City of Wichita, 54 F.3d 652 (C.A. 10, 1995) are cited supporting the view that for the exemption to be defeated there must be an express policy that actual pay will be reduced. In Aaron the court found no such policy, in fact none of the employees "ever had their pay docked under such a policy. Only accrued sick leave was affected by days missed." Id. p. 658, cf., International Association of Firefighters v. Alexandria,720 F. Sup. 1230, 1232 (Ed. Va. 1989) which held the "docking of leave or accrued compensatory time for absences of less than an entire day (does not) defeat salaried status," aff'd 912 F.2d 463 (C.A. 4, 1990) (without published opinion).
All of this is interesting but apart from the foregoing observations it is also true, and perhaps more to the point in regards to the specific motion before the court, that this specific allegation, if it can be considered such, is not identified as to be a question of law or fact common to class representative and the members of the proposed class, cf., Wagnerv. Taylor, supra at 836 F.2d page 589.
(ii.)
In response to interrogatories the plaintiff claimed he was not a salaried employee because he was required to work forty hours per week and had to keep track of his time. The court can deduce these policies applied to all class members because it is explicitly so stated in the portion of the salary employee manual submitted to the court. CT Page 3324
It has been repeated in many cases and commentators that in examining whether class certification should be granted the court should not look into the merits, Federal Practice Procedure,
Wright, Miller Kane (2d. ed.), Vol. 71, § 1759 pp. 96-102, cf., Campbell v. New Milford Board of Education, supra, Eisen v.Carlisle Jacquelin, 417 U.S. 156 179 (1974). The plaintiff seeking class certification, however, must still articulate his or her claim in order for the court to conduct the necessary analysis. The amended complaint does not specifically articulate these just mentioned grounds as a reason to deny the employer exemption. In the response to interrogatories by the plaintiff, he does say that he could not be considered a "salaried" employee because he was required to work forty hours and the hours he worked were tracked. These factors alone and standing by themselves have nothing to do with whether a professional employee is paid on a salary basis and thus exempt from overtime provisions of the wage law. The federal test (29 C.F.R. § 541.118 (a) and our test should be (leaving aside disagreement over the words "subject to") "An employee is paid on a salary basis if, on a weekly or less frequent basis, he (sic) receives a predetermined amount which constitutes all or part of his (sic) compensation, and that amount is not subject to reduction because of variations on the quality or quantity of the work performed", 48A Am.Jur.2d § 3934, pp. 794-795.
The fact that employees were required to work eight hour days or that their work time was tracked standing alone have nothing to do with the determination of whether the salary basis test is met. These two matters alone or together must be related to areduction in compensation. In other words, if you worked less than eight hours a day consistently and the boss finds out through time cards or fancier reporting systems you may get fired or disciplined — up to that point if you had received your full paycheck how could you make a § 31-76 (c) overtime claim on the basis that you are not "salaried." Also, Sikorsky works mainly on government contracts, it uses engineers — no matter what type of contracts it works on one assumes that it is interested in cost control and the efficient allocation of the work time of relatively highly paid employees like engineers between jobs. That is a good reason to require tracking of time — what does that have to do with whether a person is or should consider him or herself "salaried"?
Plaintiff's able lawyer probably was aware of the difficulty with the bald proposition regarding the eight hour day and time CT Page 3325 tracking advanced by his client in response to interrogatories as a basis for class certification. Thus in his first brief at page 7 in talking about commonality requirements he says the questions can be reduced to a determination of whether the employees were entitled to their stated weekly salaries regardless of the number of hours worked or whether the employees were entitled to work fewer than eight hours a day or forty hours a week and still receive their stated weekly salaries." The final brief is somewhat more elusive but on the other hand more enlightening as to the real nature of the claim in this regards. At page 27 it sets forth a series of questions which purport to show commonality "were class members subject to reprisals for not working full eight hour days?" . . . "Were class members subject to having their pay docked for absences less than eight hours? Did 260 class members actually have their pay docked for absences of less than eight hours or for suspensions unrelated to seniors safety violations?"
The plaintiff never had his pay docked, the policy manual does not even explicitly indicate docking of pay will be a consequence of failure to comply with these provisions and as previously noted is aimed at exempt and non-exempt salaried employees. We are back again to the 260 employees who had their pay docked. For reasons previously discussed what happened to them cannot be regarded as a "settled policy" for all engineer employees and the plaintiff as putative class representative fails to meet the commonality and typicality tests if he tries to rely on their situation to obtain class certification.
(iii.)
The claim made by the plaintiff that he could not be considered salaried because he like other members of the prospective class were in fact compensated for overtime appears to be properly before the court for the purposes of this motion. He makes the claim in his response to an interrogatory and counsel explicitly raises the claim in his brief. Also counsel for the defendant appears to concede the practice, see pp 52 et seq. of October 17, 1996 brief. The court has previously noted the manner in which approved overtime could be earned by Sikorsky engineers.
The federal regulations provide that payment of compensation in addition to salary is not inconsistent with being employed on a salary basis, 29 (F.R. 541.118(b)). But courts have reached CT Page 3326 conflicting positions on whether the payment of overtime on an hourly basis negates salary basis status. Our state has not dealt with this issue. The federal courts are divided with most of them, including the Second Circuit, holding that paying an hourly rate to an exempt employee for each hour worked beyond the regular schedule does not defeat the exemption of the employee from overtime, Dole v. Malcolm Prime, Inc., 758 F. Sup. 899
(S.D.N.Y., 1991), York v. Wichita Falls, 944 F.2d 236 (C.A. 5, 1991)Keller v. Columbus, 778 F. Sup. 1480 (S.D. Ind., 1991); Avery v.City of Talladega, 24 F.3d 1337 (C.A. 11, 1994). Some courts take a contrary view, Brock v. Claridge Hotel Casino, 846 F.2d 180
(C.A. 3, 1988); Thomas v. County of Fairfax, 758 F. Sup. 353
(E.D. V.A., 1991); Banks v. North Little Rock, 708 F. Sup. 1023
(E.D. Ark., 1988); Abshire v. County of Kern, supra. The defendant cites a recently decided persuasive case for the proposition that such payments should not defeat exempt status.Boykin v. Boeing, 1996 W.L. 343334 (W.D. Washington, 1996) (not reported in F. Supp). It would seem to violate the remedial nature of these wage statutes to discourage employers from compensating their employees for additional efforts at least where the overtime requirements are in response to immediate competitive situations or contract completion emergencies and are not standard operating procedure for these companies.
The plaintiff's claim in this regard, based as it is on a policy applicable to the class as a whole meets the commonality test. The question of law and the facts necessary to support this claim are common to the entire class. The plaintiff himself received such overtime compensation and differences with other class members concern only the total hours each employee might have worked overtime. The common factors define the class with an adequate degree of precision. Also typicality is met since the class representatives claim on this matter has the same characteristics as the claim of the class at large.
The defendant notes Boykin purported to rely on the great weight of authority and maintains the Boykin approach seems to be better reasoned. It concludes its position on page 57 of its brief by saying: "Clearly, Sikorsky's payment of overtime compensation does not provide a basis for the plaintiff's claims that he or any other engineer is entitled to any additional overtime compensation." Even if the court were to agree with this analysis as a matter of law the argument goes to the merits and the court cannot consider the merits in passing on a claim of class certification even if the claim is frivolous. The first CT Page 3327 three requirements of p. 13, § 87 appear to be met by this claim.
4.
P.B. § 87 also requires that in the event that as to any particular issue the requirements of numerosity, commonality, and typicality are met the plaintiff must still establish that the putative class representative "will fairly and adequately protect the interests of the class."
In determining whether the interests of a class will be adequately represented the federal courts consider both the adequacy of the named representative and the prospective class counsel, In re Asbestos Litigation, 90 F.3d 963, 977 (C.A., 1996)Retired Chicago Police Ass'n v. City of Chicago, 7 F.3d 584, 598
(C.A. 7, 1993).
There is no question that able and experienced counsel for the plaintiff can adequately assume the responsibilities of bringing and prosecuting this class action. The real thrust of the defendant's position on the adequacy issue is the claimed fraudulent conduct of the plaintiff. It is claimed that he admitted he did not devote forty hours a week to his employer as required, he mischarged employer's customers for time spent on political pursuits and falsified certain documents he would need to rely upon in this litigation. Sikorsky argues that although the plaintiff seeks now to retract prior admissions they will constitute unique defenses against the putative class representative and become the focus of the case to the detriment of the class as a whole, Gary Plastic Packaging Corp. v. MerrillLynch, Pierce, Fenner Smith, Inc., 903 F.2d 176, 180 (C.A. 2, 1990, Kovaliff v. Piano, 142 F.R.D. 406, 408 (S.D. N.Y., 1992).
The defendant recognizes that most of the cases dealing with the inadequacy of a proposed class representative who is subject to unique defenses involve securities fraud litigation but argues the reasoning of those cases is applicable here citing Leroy v.Paytel III Management Associates Inc, 1992 W.L. 367090 (S.D. N Y, 1992) (not reported in the F. Supp. ). Sikorsky states that it is unaware of any case where a plaintiff who has admitted falsifying his time records has sought to represent a class of employees in making a claim for overtime pay.
The defendant relies heavily on the case of Weisman v.
CT Page 3328Darneille, 78 F.R.D. 669 (S.D. N.Y., 1978) which recapitulates much of the argument made — because of the nature of the defenses against him he will be subject to discrediting cross examination that will prejudice the claims of the entire class, id. page 671. In Weisman the plaintiff sought to represent a class of investors in a suit involving the very statute he had violated — thus he lacked the honesty and other affirmative qualities required of a personal representative, id. p. 671.
The best discussion of these issues seems to be contained inMoore's Federal Practice, Vol. 5, 3d. edition, § 23.25, pp. 23-11-23-152.
First it should be said that the class representative need not be the best of all representatives; adequate representation is enough Ashe v. Board of Elections, 124 F.R.D. 45, 50 (E.D. N.Y. 1989). Also some weight must be given to the fact that in a particular case the putative class representative is the only person who has stepped forward or is likely to step forward to represent the class. Green v. Wolf Corp, 406 F.2d 291, 295 (C.A. 2, 1968). Also as several cases indicate allegations regarding the adequacy of the representative must be relevant to the claims of the litigation such that the representatives problems could become the focus of cross-examination to the detriment of the actual class claims. The testimony or credibility subject to attack has to be on an issue critical to one or all of the causes of action, cf. following cases where class representative found not to be adequate because of these problems, German v. FederalHome Loan Mortgage Corp, 168 F.R.D. 145, 154 (S.D. N.Y., 1996),Darvin v. International Harvester, 610 F. Sup. 255, 257 (S.D. N.Y., 1985), Kline v. Wolf, 702 F.2d 400, 403 (C.A. 2, 1983).
The court is concerned about the serious allegations made against the plaintiff but cannot find, at least, on the record presented before it, that attacks on his credibility will become the focus of the litigation. The only claim the court concludes merits class action treatment is that presented by the fact that overtime was paid to professional employees. The plaintiff apparently was accused of and admitted to a discrete falsification of hours worked on certain contracts. It is not the court's understanding that their will or can be a wholesale attack on whether he worked any overtime hours.
This is not securities fraud litigation where the class representative must rest his or her claim on detailed testimony CT Page 3329 about representations made personally or understandings held in sometimes complicated securities litigation. The basis of the claim revolves around the resolution of a somewhat abstract legal issue regarding the effect of a company paying hourly overtime pay to otherwise "salaried" employees. If the court is wrong in its suppositions decertification would be "appropriate if unique and substantial issues of credibility cling to the class representative thereby creating a potential adverse impact on the class", Dubin v. Miller, 132 F.R.D. 269, 272 (D. Colo., 1990).
The defendant also points to the allegations made against the plaintiff as lending support to the notion that this whole endeavor to seek class authorization is a vindictive effort by the plaintiff to get back at Sikorsky for being forced out of his job under somewhat unsavory circumstances. Animus however can provide the necessary zeal to prosecute a class action. Kayes v.Pacific Lumber Co. 51 F.3d 1449, 1464 (C.A. 9, 1995). In Dubin v.Miller, supra, 132 F.R.D at page 272, the court said: "Lawsuits are frequently motivated by causes other than the desire of pecuniary gain, and some of these causes — even personal animus toward the defendants — are consistent with a finding that plaintiff is an adequate representative." Vindictive motives for initiating the litigation standing alone do not warrant denying class certification at this point; there is no indication that feeling of animus would somehow interfere with the possibility of a suitable settlement of the litigation, cf Limm v. CitizensSavings Loan Ass'n. , 430 F. Sup. 802, 811 (N.D. Cal., 1976).
The defendant also has suggested other matters which concern the adequacy requirement. It is suggested that some or many of the class members may object to the litigation or particular claims being advanced by the putative class representative. It has been held that class certification will not be denied because some class members object to the litigation or do not want to pursue any remedies they might have, James-Oldsmobile-Pontiac-GMCTruck, Inc. v. GMC, 164 F.R.D. 428, 437 (N.D. Miss., 1996). In all likelihood the position of dissenting class members can and will be vigorously asserted by the defendant, Stolz v. United Broth.Of Carpenters and Joiners, 620 F. Sup. 396, 406 (D.C. Nev., 1985). If a class member genuinely disputes the appropriateness of the litigation, the class representative, or the class counsel such a member can move to opt out, cf. James Oldsmobile, supra, 164 F.R.D. at page 437; Lockwood Motors Inc. v. GMC,162 F.R.D. 569, 578 (D.Minn. 1995). CT Page 3330
It is true that courts have found the class representative to be inadequate if a substantial number of class members are clearly and vigorously opposed to the litigation, cf. East TexMotor Freight v. Rodriguez, 431 U.S. 395, 405 (1976); Pratt v.Chicago Housing Authority, 155 F.R.D. 177, 180 (N.D. Ill., 1994), but the court cannot make a finding of substantial opposition on the state of this record.
The court concludes that the adequacy requirements of P.B. § 87 are met.
5.
The major issues of contention between the parties have not concerned the applicability or bearing of P.B. § 88. Given the previous discussion it seems clear that questions of law and fact common to the class will predominate over any questions affecting only individual class members. The fact that monetary claims for individual class members may differ will not defeat this requirement.
Also a class action seems superior to other available methods to fairly and efficiently adjudicate the controversy. Each class member has a relatively small claim and probably would have little incentive to vindicate his or her own legal rights against Sikorsky apart from whether or not the class member would be intimidated from doing so. If such actions were brought, duplicative efforts and a waste of judicial resources would result as the plaintiff points out. The requirements of P.B. § 88 are met.
Based on the foregoing discussion the court is compelled to grant the motion for class certification. This has been a troublesome case for the court. Troublesome in the sense that the legal sufficiency of the one viable basis for class certification could not be tested by the court. As noted, Connecticut courts that have considered class certification motions have relied heavily on federal cases applying Rule 23 of the federal rules of civil procedure. Since Campbell, our courts have repeated with consistency the well established federal view that in weighing such a motion "the probability of success on the merits is irrelevant and should not be considered, Campbell, 36 Conn. Sup. at page 360.
In a footnote on the same page the Campbell court cites the CT Page 3331 federal basis for such a view . . . "the determination of whether the plaintiff's claims are substantial is more properly tested by a motion for summary judgment or a motion to dismiss", id., footnote 2 at page 360. The latter motion is apparently the federal Rule 12 motion to dismiss in civil cases.
Query whether this view makes sense or is fair in a jurisdiction like ours. In a federal class action claim each putative class member would be required to affirmatively join in the suit (29 U.S.C. § 216 (b)). In our state, all the putative class members are part of the class and their rights are conclusively determined unless they affirmatively opt out of the class, cf Fetterman v. University of Connecticut,41 Conn. Sup. 141, 144 (1988). There is much more reason to join issue on the merits or lack of merits of a case under such circumstances as soon as a motion for certification as a class action is made.
Also we have a fact pleading state whose procedural rules allow requests to revise to be used to focus legal claims so that they can be tested early on in litigation through motions to strike. These motions merely go to the legal sufficiency of the claim and do not require exploration and resolution of factual claims. As previously discussed the federal courts say that questions of commonality and typicality under Rule 23, and necessarily under our rules are often "enmeshed in the factual and legal issues comprising the plaintiff's cause of action,"Falcon, 457 U.S. at p. 160. This "enmeshing" process necessarily involves an examination of the legal basis of a claim and this is related to its legal sufficiency. In a jurisdiction like ours which allows efficient testing of legal sufficiency questions — independent of class certification issues — through the motion to strike, is not the mantra of do not consider the merits of the claim on a motion for class certification, with the necessary corollary of no motion to strike practice, wasteful of judicial resources? If the only issue as to "merits" rests on legal sufficiency why cannot the motion for class certification be considered along with motions to strike to ascertain whether every one's time is being wasted ab initio. In a case like this such a simultaneous or two track approach would have been much preferable. No where in the practice book does it say that a complaint filed in a class action matter must not otherwise comply with fact pleading requirements in setting forth the underlying claim on which the class representative seeks to base his or her ultimate request for class certification. CT Page 3332
In any event, this question is not before the court and the motion for class certification is granted.
CORRADINO, J.